53   393
f91  241

MOSES COOPER, ALIAS MOSES DUNLAP, v. THE STATE.

1. CRIMINAL LAW. *New trial. Application on ground of newly discovered evidence. Must contain what.*
   In an application for a new trial on the ground of newly discovered evidence the accused must show that he has used diligence in the preparation for trial, that the testimony on which he relies could not have been discovered sooner, that it is material and not cumulative, that in all probability it would produce a different result on a second trial, and that the testimony would be attainable on such trial.

2. SAME. *Application for new trial. Must satisfy the court of injustice done.*
   On application for a new trial the showing must satisfy the court that injustice has been done, and that requirement will not be met if the object of the new evidence is to contradict or impeach a witness, nor if it applies to a point directly drawn in issue and abandoned on the trial, or in the preparation of it.

3. SAME. *Same. Laches of accused. Case in judgment.*
   The accused was charged with stealing a gun of the value of fifteen dollars. Several witnesses were examined for the State, who had seen and could testify as to the value of the gun. The accused did not cross-examine any of the witnesses upon this point, or attempt to prove by any of them the value of the gun. There was no witness for the defendant, who moved for a new trial on the ground of newly discovered evidence as to the value of the gun. *Held*, that such *laches* of the accused was sufficient to defeat the application for a new trial.

ERROR to the Circuit Court of Clay County.

Hon. JAMES M. ARNOLD, Judge.

At the September Term, 1876, of the Circuit Court of Clay

County, Moses Cooper, *alias* Moses Dunlap, was indicted for the larceny of a double-barrelled shot-gun, of the value of fifteen dollars, and was tried and convicted as charged. The defendant at the same term filed a motion for a new trial, and assigned as reasons for the motion " that said defendant has, since the trial, learned of new and material testimony to him, of which he had no knowledge at or before the trial of his case, as will fully appear at large by affidavits filed." Several affidavits were filed in support of the motion. Reuben Stewart, in his affidavit, stated that he was the owner of the gun which the defendant was charged with having stolen, that it was not worth more than eight dollars, that when he bought it he only paid nine dollars for it, and that when stolen it was out of repair. Fred. Beall, in his affidavit, stated that he was counsel for the defendant; that before the trial of said cause he went to John Jordan, who is alleged in the indictment to have been the owner of the gun stolen, and asked him who the owner of the gun was, and where he lived ; and Jordan informed him it belonged to some one out in the prairies, but where such man lived, or what was his name, he could not tell; and affiant further stated that he was unable to find any one by whom he could prove the real value of the gun. G. W. Hines, in his affidavit, stated that he had been shown the gun said to have been stolen, and in his judgment it was not worth more than eight dollars, and that it was an old and much worn gun. The affidavit of the defendant alleged that, since the trial, it had come to his knowledge that one Reuben Stewart was the owner of the gun charged to have been stolen ; that he could prove by said Stewart that the value of the gun did not exceed eight dollars; that it was an old double-barrelled shot-gun, out of repair, and originally cost only nine dollars; that affiant made diligent search and inquiry, before his trial, to find out who was the real owner of said gun, and some one by whom he could prove its real value ; that he was not aware, at the trial of this case, what was the real value of said gun, or that he could prove its value by the owner, Reuben Stewart, or by any one else ; that he had made every effort to find out the real value of said gun before the trial, but was not able to do so, and had only on that day learned of the facts in

his affidavit stated.   The above are the affidavits referred to in the defendant's motion.

The court overruled the motion for a new trial; to which the defendant excepted, and by writ of error brings the case to this court.

*Fred. Beall,* for the plaintiff in error.

The only error assigned is, that the court below erred in overruling the motion for a new trial, and the only ground relied on is that of newly discovered evidence.

1. In his affidavit, the plaintiff in error states that the evidence was discovered by him after the trial, and " only on this day," the 4th of October, 1876.   His affidavit in this part is substantiated by the affidavit of Reuben Stewart.

2. His own affidavit avers that he made diligent search to find out who was the real owner of the gun alleged to have been stolen, and some person by whom he could prove its value.   The plaintiff in error was indicted on the 21st of September, put upon his trial on the 25th of the same month, made his motion for a new trial on the 4th of October, and alleges in his affidavit that it was on this day that he first discovered the new evidence.

3. The newly discovered evidence is, that the gun was of less value than ten dollars at the time it was stolen.   This is shown by the affidavit of Reuben Stewart, the owner of the gun, and the affidavit of Mr. G. W. Hines.   Only one witness, John Jordan, swore to the value of the gun.   It is quite reasonable to conclude that the evidence of the real owner of the gun that it was not worth more than eight dollars, and the evidence of one other disinterested witness, G. W. Hines, would be sufficient to secure a verdict, reducing the crime from grand to pĕtit larceny.

The court is referred to the following authorities: *Kane* v. *Burrus,* 2 S. & M. 313; Hilliard on New Trials, 375 ; Graham & Waterman on New Trials, 462 *et seq.*

*G. E. Harris,* Attorney-General, for the State.

The object of a new trial is to show that the gun, the stolen property, was worth less than ten dollars, thus making petit larceny under the act of 1876, p. 51.   Then the proof of the

value of the property is the only evidence involved. Has
proper diligence been shown? *Hare* v. *Sproul*, 2 How. (Miss.)
772; *Rulon* v. *Lintol's Heirs*, 2 How. (Miss.) 891; *Garnett* v.
*Kirkman*, 41 Miss. 94; *Watson* v. *Dixon*, 12 S. & M. 608.
The only diligence shown was that of the attorney, Fred
Beall, Esq., who says he went to the witness John Jordan,
and inquired for the owner of the gun, by whom he could
prove its value. The diligence required was not to find the
owner of it, but to prove its value. Jordan testifies that the
gun was worth fifteen dollars, and upon this point he was
not even cross-examined. Other persons saw the gun, but
no attempt was made to prove what is now proposed, that
the gun was worth less than fifteen dollars. There was Jor-
dan, Joiner, Wooten, Gore, and the mayor, all of whom saw
the gun and examined it, and yet not a question is asked of
either of them touching the value of the gun. Proper dili-
gence has not been shown.

SIMRALL, C. J., delivered the opinion of the court.

The plaintiff in error was tried and convicted of the lar-
ceny of a double-barrelled shot-gun, alleged in the indict-
ment to have been of the value of fifteen dollars. But one
error has been urged in this court predicated on the third
ground in the motion for a new trial; viz., " Because, since
the trial, the defendant has heard of new and material testi-
mony . . . which has come to his knowledge since the trial,
as appears by affidavits filed."

The law required that the accused should have used dili-
gence in the preparation for trial; and in applications of this
sort he must show that the testimony on which he relied
could not have been discovered sooner, not from fault on
his part; that it is material, and not cumulative; and that
in all probability it would produce a different result on the
second trial. *Bledsoe* v. *Little*, 4 How. (Miss.) 13; *Wright* v.
*Alexander*, 11 S. & M. 411; *Watson* v. *Dickens*, 12 S. & M.
608. It should also be made to appear that the testimony
would be attainable on a second trial.

Passing by the objection to the affidavit of the accused, that

he does not state that he can procure the attendance of the witness at another trial, the showing is insufficient, because of the laches of the accused on the trial.

The indictment laid the property in the gun to be in John Jordan. The proof was that Jordan was in possession at the time of the theft as bailee, the gun having been left with him by the owner for repair. The new testimony relates exclusively to the *value* of the property. Its effect could only be to reduce the grade of the offence from grand to petit larceny. The substance of the affidavit of the accused is, that he inquired of Jordan upon the trial who was the owner of the gun, and that Jordan could not give him the information; that he has learned since the trial that Reuben Stewart is the owner. "Affiant was not aware at or before the trial . . . what was the value of the gun, or that he could prove the value by Reuben Stewart or any one else, and that he made every effort to find out the real value of said gun before the trial, but was not able to do so," &c. Reuben Stewart and two other persons made affidavits that the gun was not worth more than eight dollars.

Recurring to the testimony delivered on the trial on this point, John Jordan, the first witness for the State, said that he was a gunsmith, that the gun had been left with him for repairs, and that he had repeatedly seen it. "The gun was worth fifteen dollars; he would give fifteen dollars for the barrels alone, they being very fine London twist." This was all the testimony on the point. But it appears affirmatively that other persons were acquainted with the gun. Joiner, the constable, was a witness, and took the gun in charge when he arrested the accused. It was produced before the mayor of West Point, before whom the preliminary examination was had. Mr. Gore was present when Joiner found the gun. Rain Wooten, a gunsmith, was a witness on the trial, and knew the gun; and yet the accused put no questions to either Joiner, Gore or Wooten as to value. He did not call the mayor. The accused and his counsel seem to think that Reuben Stewart, the owner, bears the same relation to the question of value as a subscribing witness does to the paper

which he attests; that he is a necessary witness. In the nature of things, the value of this sort of property in such common use can be estimated by almost every man in the community. It is not like paintings or precious stones, of which experts alone can form an intelligent judgment; but is rather like that class of merchandise and commodities, of the value of which most persons have knowledge. Since the defendant did not test the accuracy of Jordan's opinion by examining Wooten, also by his trade, especially competent and reliable on this point, nor the constable, it would hardly be going too far to hold that he was content with the value as estimated by Jordan.

The showing must satisfy the court that injustice has been done. That requirement will not be met if the object of the new evidence is to contradict or impeach a witness, nor if it applies to a point directly drawn in issue which was abandoned on the trial, or in the preparation of it. Hilliard on New Trials, 376; *Crafts* v. *Union Mut. Fire Ins. Co.*, 36 N. H. 44; *Moore* v. *Philadelphia Bank*, 5 S. & R. 41. The accused made no effort on the trial to prove a value that would reduce the offence to petit larceny. The suggestion made in the case cited from 5 S. & R. is not inappropriate, that such applications must be " received with great caution, because there are few cases tried, in which something new may not be hunted up, and because it tends to the introduction of perjury."

But is it probable that the new evidence would produce a different verdict? Where there is a difference in the quality of the same kinds of articles, there will be more or less difference of opinion as to value. Absolute certainty is not attainable. The judgment is reliable according to the degree of information and knowledge which the person has. Is not the opinion of Jordan, who is acquainted with the material and construction of fire-arms, worth more than that of a half-dozen witnesses who cannot have his acumen and experience? and if a jury should adopt his opinion and reject that of the other five, could it be safely said that their conclusion is wrong? The indictment notified the accused that value was a material fact to be proved. It was *crassa negligentia* if he

declined to examine the witnesses produced by the State especially qualified to speak on the subject, or call others shown to have knowledge of the gun. The owner was not a necessary or indispensable witness.

*On the whole case the judgment is affirmed.*