No. 771.

## STORMS v. LEMON.

RECOVERY.—*When Not Excessive.—Reversal of Judgment.*—A judgment will not be reversed on the ground of excessive recovery, when there is evidence to support the finding.

EVIDENCE.—*Opinion Testimony.—Value of Services.—Nursing Sick Person.*—Every person who has arrived at the age of maturity must, in the course of nature, have had more or less experience in caring for the sick or seeing it done, and when one has seen such services as they are being rendered, he is competent to give the facts and then his opinion as to the value of such services, the weight of such evidence to be determined by the jury.

SAME.—*Examination of Witness.—When Objection too Late after Question is Put and Answered.*—When a witness is being examined, a party can not wait until a question has been answered by the witness, and then, after taking his chances for a favorable answer, object and move to strike out, if it be unfavorable; provided the party has not been prevented from making his objection at the proper time, and the question indicates the subject-matter and the question is responsive to it.

SAME.—*Ruling Out.—When Not Erroneous.*—Where evidence is ruled out, the ruling can not be held erroneous merely because the objection upon which it was excluded was too general to have raised any question on behalf of the objector, had his objection been overruled.

From the Montgomery Circuit Court.

*D. C. Wilson* and *R. P. Davidson,* for appellant.

*F. M. Goldsberry, B. Crane* and *A. B. Anderson,* for appellee.

GAVIN, C. J.—Appellee sued appellant for work and labor performed at her request in nursing and attending upon the appellant's father during his last sickness.

A motion for a new trial raises the only questions in in this court.

The causes for the motion are, first, that the amount of the recovery is excessive; second, that the verdict is not sustained by the evidence.

Appellee's evidence tends to prove that appellee and her husband were living as tenants on appellant's farm,

and took her father to board.    He became afflicted with a gangrenous complaint, which first attacked his toe and worked upward upon his foot and limb, causing it to decay and slough off, emitting most foul and almost unbearable odors, and oftentimes requiring exceedingly frequent rebandaging.    Appellee, upon appellant's promise to pay her what it was reasonably worth, cared for and waited on the patient for about three weeks, assisting him in the operations of nature, dressing his foot and in all ways providing for him.    The work required was most disagreeable and attended with some hazard.    The pain suffered by the patient was so severe as to cause him to tear off the bandages and also the flesh from the foot.

One of the neighbors testifies that the stench permeated the whole house, and upon the night he died neighbors sitting on the outside of the house were compelled to move around, as the wind changed, to avoid the odors coming from the house.

Without going further into details, we are of opinion that there was evidence to support the finding, and also to justify the jury in allowing the sum given, although appellee was not a trained nurse and was without any other experience than comes into the life of the average woman who has arrived at the age of 36.

Several objections are presented arising upon the introduction of the evidence, which we will consider.

There was no error in permitting appellee to testify as to the value of her services, after she had described them to the jury.

It is said in *Mercer* v. *Vose*, 67 N. Y. 56:    "I can conceive of no case where one has himself rendered a service to another, when he will not be competent to give evidence of its value.    Knowing the precise nature of the service rendered, he must have some knowledge of

Storms *v.* Lemon.

its value, and he is thus competent to give his opinion. It may not be worth much. Its weight, however, is for the jury.''

Appellee's husband was permitted to testify as to the value of her services.

The objection made thereto in the court below, which is the only one to be considered here, was that "the witness has not shown any special knowledge on the subject." He had recounted in detail the character of the services rendered, and the extent to which they were required. It was, perhaps, intended to raise by the objection the question as to whether witness had shown such a knowledge of values of such services as to render him competent to testify thereto.

The services rendered by appellee were not claimed to be those of a professional trained nurse of unusual skill and capacity. She was merely an ordinary farmer's wife, with such skill and capacity and experience in sickness as ordinarily belongs to an average woman. There was no claim for special skill and training, but simply for reasonable compensation, taking into consideration the character and amount of the service performed. It was not necessary that one should be an expert and have special experience to enable him to be competent as a witness. Every man who has arrived at years of maturity must, in the course of nature, have had more or less experience in caring for the sick or seeing it done, and when one has seen such services as they are being rendered he is competent to give the facts and then his opinion as to the value of such services, the weight to be given to the opinion, being determined by the jury.

In many instances, before a witness can give an opinion, he must be shown to have some special aptitude, skill, or knowledge of the subject; but there are some

things coming ordinarily within the observation of all men as to which any man will be entitled to give his opinion; thus opinions as to time, speed of ordinary moving objects and distances are received without any proof of special knowledge or skill on the part of witnesses.

In 1 Greenleaf on Ev., section 440, note, it is said: "So, too, as to the marketable condition and value of property and many other questions where it is not practicable to give more definite knowledge, opinions are received. In some cases, these opinions must come from experts, who have acquired special skill in detecting the connection between certain external symptoms and their latent causes; and in other cases, all persons are supposed to have such knowledge and experience as to entitle their opinions to be weighed by the jury."

"It has been held, that no question of science is involved, and that a person need not be an expert to give an opinion as to the speed of a moving train." *Louisville, etc., R. W. Co.* v. *Jones*, 108 Ind. 551; *Detroit, etc., R. R. Co.* v. *Van Steinburg*, 17 Mich. 99.

The rule is well settled that upon questions of value the opinions of ordinary witnesses may be received. *Grave, Admr.*, v. *Pemberton*, 3 Ind. App. 71 (73).

The court says in *Holten* v. *Board, etc.*, 55 Ind. 194: "But the rule is, that any witness who knows the facts personally may give an opinion, stating, also, the facts upon which he bases his opinion."

Many facts were given by the witness, and no objection was made, in the court below, upon the ground that the opinion sought was not limited to the facts recited. *Carthage Turnpike Co.* v. *Andrews*, 102 Ind. 138.

In *Chamness* v. *Chamness*, 53 Ind. 301, it is said: "The appellant complains, because the court, over his objection, allowed certain witnesses, who were not ex-

perts, to testify as to the value of board. There is no error in this. It does not require a knowledge of any particular science, art, or skill, to testify as to the value of board."

In *Board, etc.,* v. *Chambers,* 75 Ind. 409, the court says, concerning the evidence of certain physicians: "They may have had some knowledge of the value of such services without knowing anything at all about what others were charging for like services."

The principle that some matters are of such usual and common occurrence that all men will be presumed to have some knowledge thereof is supported by authorities outside of our own State.

In *State* v. *Johnson,* 1 Mo. App. 219, we find this statement: "No rule requires any special qualification of an expert to estimate the value of household articles in common use."

In *Tubbs* v. *Garrison,* 68 Iowa, 44, the plaintiff and his wife testified to the value of certain household goods. To the objection to their evidence the court responds: "It is insisted, to be sure, that they were not competent witnesses, because it did not appear that they were acquainted with the value of such property. But the property was ordinary household goods. It was such as all housekeepers were accustomed to buy; and, while they may not be the best judges of the value, we think they may be presumed to have such knowledge upon the subject as to render them competent to testify upon it."

Concerning the value of a gun, the Supreme Court of Mississippi says, in *Cooper* v. *State,* 53 Miss. 393: "In the nature of things, the value of this sort of property in such common use can be estimated by almost every man in the community. It is not like paintings or precious stones, of which experts alone can form an intelligent judgment; but is rather like that class of merchandise

and commodities, of the value of which most persons have knowledge.''

In *Ritter* v. *Daniels*, 47 Mich. 617, it was held competent to prove the value of a man's services by three witnesses, for two of whom he had worked and one of whom had worked with him.

Similar objections are urged as to other evidence introduced, but under the law, as we have found it to exist, we are of opinion that there was shown sufficient knowledge of the matter under consideration to justify the court in admitting the evidence.

Exception is taken to certain evidence concerning the relations existing between appellee and her husband and Dr. Fickle, a witness for appellant. An examination of the record discloses that in each instance the objection was made after the question was answered. Such objections are unavailing. A party can not wait until the answer comes, and then, after taking his chances for a favorable answer, object and move to strike out, if it be unfavorable. This rule holds good where the party has not been prevented from making his objection at the proper time, and where the question indicates the subject-matter, and the answer is responsive to it.

Under other circumstances, a different rule might govern, where a proper motion to strike out is made. *Brown* v. *Owen*, 94 Ind. 31; *Bingham* v. *Walk*, 128 Ind. 164 (173); *Newlon* v. *Tyner*, 128 Ind. 466.

We may add that we are of opinion that the answer could not, in this case, have worked any material injury to appellant in any event.

The objection to the evidence concerning a straw tick is in the same condition as those last mentioned.

Where evidence is ruled out the ruling can not be held erroneous merely because the objection upon which it was excluded was too general to have raised any ques-

The Cleveland, Cincinnati, Chicago and St. Louis Ry. Co. v. Johnson.

tion on behalf of the objector, had his objection been overruled. No reason is given by counsel to sustain the competency of the evidence rejected. We must, therefore, presume that it was incompetent, and in that event there was certainly no error in rejecting it.

We do not find any error in admitting evidence as to the condition in which appellee's house was left by reason of the sickness of the patient and the work required to restore it to a habitable condition after his death. These were, at least, circumstances admissible to throw light upon the character of the services required by the sick man in his lifetime.

We have examined all the questions presented and discussed by counsel, and have found no cause justifying a reversal.

Judgment affirmed.

Filed June 22, 1893.