No. 30,260.

L. A. MILLSPAUGH, *Appellee,* v. W. M. McKNAB and THE McKNAB-BESS OIL and DRILLING COMPANY, *Appellants.*

(7 P. 2d 51.)

Opinion filed January 30, 1932.

*James A. McDermott* and *Richard B. McDermott,* both of Winfield, for the appellants.

*H. W. Herrick,* of Winfield, *W. L. Cunningham, D. Arthur Walker, Fred G. Leach* and *Wm. E. Cunningham,* all of Arkansas City, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action for compensation for services rendered by plaintiff in securing an oil lease on certain school land in Cowley county. Judgment was for plaintiff. Defendants appeal.

The suit was brought against W. M. McKnab and the McKnab-Bess Oil and Drilling Company. McKnab is president of the company. The petition alleged that McKnab employed Millspaugh to obtain from the board of administration of the state an oil and gas lease on the land in Cowley county where the state training school is located. The tract comprises about 580 acres. The petition alleged further that appellants agreed to pay the expenses of appellee and reasonable compensation for his services, to be graduated, de-

termined and established by the success of his endeavors and the value of the lease as shown by developments thereon. The petition then alleged the efforts of Millspaugh, that he had finally been successful and that the reasonable value of his services was. $10,000, of which $200 had been paid, leaving the amount of $9,800 due, for which amount judgment was asked.

Both of the defendants demurred to the petition. These demurrers were overruled. The company answered by a general denial, alleging that whatever services were rendered by plaintiff to the defendant McKnab and any expenses which he may have incurred have been fully paid by McKnab. McKnab answered, denying that the lease was obtained by the plaintiff, but alleged that it was awarded to the defendant McKnab as the highest and best bidder for the same at a public letting conducted by the state board of administration after public advertisement for bids in the manner provided by chapter 266 of the Laws of 1925. He also alleged that Millspaugh did perform some service for him prior to the enactment of that statute, but that there was no agreement for compensation, that Millspaugh was entitled to reasonable compensation for his efforts and had been fully paid, and that after the enactment of the act referred to above Millspaugh did nothing whatever toward the obtaining of the lease, and that McKnab had no contract whatever with Millspaugh for services after the enactment of the above act. The answer of McKnab alleged further that if Millspaugh had any such contract, as alleged in the petition, then it was against public policy, and void.

Chapter 266 of the Laws of 1925 is an act which required the board of administration to advertise for bids before leasing any land under its control for the production of oil and gas. The act provided certain details as to the advertising and the terms of the lease, which the board should accept.

The evidence as to the contract of employment may best be given in the language of Millspaugh, as follows:

"I went to his office the same day. . . . I went in his office and he (McKnab) said to me, 'Are you acquainted with Governor Paulen?' I said, 'I am.' Then McKnab said to me, 'I would like to get a lease on this state school land out here.' I said, 'Who do you want to lease it for?' He said, 'W. M. McKnab.' He said, 'I would like to have you go to Topeka and see Governor Paulen and see if you can get that lease.' I said, 'McKnab, is this a fair and square deal? I don't know you very well, never had any business relations with you, but if it is a business deal I will work for you.' He as-

sured me it was a fair and square business transaction. I said, 'Any time I find that this isn't a square business deal, I will quit you right still in the road.' That's what I told him. 'No,' he said, 'it will be absolutely square.' I said,. 'All right, shoot.' He said, 'I have been trying for a long time to get the lease: on this school land out here, and I would like to have you go up, and see Governor Paulen and see if you can't get that lease.' 'Now,' he says, 'what do you want?' I said to him, 'Do you want to give me an interest in this lease?' He said, 'No, I don't want to do that.' He said, 'I would rather pay you. What do you want?' I said, 'Mack (McKnab), I will tell you. I worked for a firm for over forty years traveling, and they pay me a moderate salary and a commission above a certain amount of my sales, give me a commission above that. If I make good, I make some money, if I don't I make less. That is the way I will work for you.' I says, 'If this lease, if I fail to get it, or if I get it and it is dry, I will charge you for time and expenses and you may give me a little bonus, but if I make good on this lease, get it and it is a producer, you pay me accordingly.' He said, 'That's good work, Oh, that's all right.' I says, 'That's the only way I know. I am not an oil man. I don't know how (long) it will take me or what I will have to do.' McKnab wanted action, for he had said, 'When can you go to Topeka?' I said, 'I can go any time.' "

Trial was to a jury, which returned a verdict for $9,800. Judgment was given accordingly, and from that judgment this appeal is taken.

Appellant asserts that ten points are involved in the appeal. One of them is that the demurrer to the petition should have been sustained. This is urged for two reasons:

1. That appellant relies on an express contract, which is unenforceable by reason of uncertainty in its terms.

2. That the contract relied on is void as against public policy.

These points will be discussed first, as a disposal of them will help in dealing with the others.

Appellants urge that the contract pleaded is an express contract whereby appellee agreed to perform certain services, but that the part of the contract which deals with the compensation appellee is to receive is so vague and indefinite that no court can enforce it. He argues that recovery cannot be had on *quantum meruit* because the petition does not in any way ask a recovery on the reasonable value of the services rendered.

Plaintiff did plead an express contract of employment, but the compensation was not fixed in dollars and cents. Does this prevent him from recovering what the services turned out to be reasonably worth? The rule is stated in 6 R. C. L. 649, as follows:

"However, after services or materials have been furnished and accepted, the fact that no price had been agreed on or that the compensation mentioned in the contract is too indefinite does not prevent the recovery of reasonable compensation."

This rule is followed in *Scott v. Wilson,* 185 Ia. 464, 170 N. W. 761. This case says:

"It often happens that there is an express contract as to the employment, but no agreement as to the amount of compensation, in which case the law implies a promise to pay reasonable compensation."

In *Hunter v. Ryan,* 109 Cal. App. 736, the contract was to pay a "bonus." The court held that this was really a contract to pay "further reasonable compensation" and upheld a judgment. This view of the law has been adopted by this court and further citation of authorities is not deemed necessary. (See *Mitchell v. Derby Oil Co.,* 117 Kan. 520, 232 Pac. 224, and cases there cited.) In that case the contract was to "make it right" with the person claiming for services. In the case at bar the record is full of the phrases "be well paid," "make it right and satisfactory," and others. We think this case comes within the principles laid down in the above cases.

Appellants argue that the demurrer to the petition should have been sustained because the contract sued on is against public policy and void. It is pointed out that the board of administration is a public body, a part of the state government, and that the contract pleaded is that the compensation to be paid Millspaugh was dependent on his success. It is urged that this brings this case under the rule announced in *Tool Company v. Norris,* 69 U. S. 45. The syllabus in that case is:

"An agreement for compensation for procuring a contract from the government to furnish its supplies is against public policy and cannot be enforced by the courts." (¶ 1.)

"All agreements for pecuniary considerations to control the business operations of the government, or the regular administration of justice, or the appointments to public offices, or the ordinary course of legislation, are void as against public policy, without reference to the question whether improper means are contemplated or used in their execution." (p. 56.)

Relying on that authority, it is urged that such a contract is bad no matter whether corrupt or sinister influences were used or not. Later cases by the U. S. supreme court, however, refer to the case of *Tool Company v. Norris,* supra, and state that there must be some improper influence brought to bear to make the contract void.

(*Stanton et al. v. Embrey*, 93 U. S. 548; *Oscanyan v. Arms Co.*, 103 U. S. 261; *Pan-American Co. v. United States*, 273 U. S. 456; *Steele v. Drummond*, 275 U. S. 199.) The following language is found in 3 Williston on Contracts, 3024:

"A person having something to sell has the right to sell it through an agent, and this right is an incident to his ownership. To declare that he may not employ an agent, upon commission, where the government is the prospective buyer, is to take away what is ordinarily one of the elements of the enjoyment of ownership—the unrestricted right to sell. Upon this line of reasoning, commission agreements for a sale to the government have been upheld and enforced in this state where the agreement did not actively require corruption in its performance. Treated as a matter distinct in its nature from agreements to procure legislation, an agreement to compensate an agent for his successful efforts in traffic with the government has been held binding, where unfairness in the dealings or an intention to resort to corruption did not actually appear from the facts."

This quotation is from *Swift v. Aspell & Co.*, 40 N. Y. Misc. 453, 82 N. Y. S. 659.

This court has followed the later cases cited above. In *Paving Co. v. Botsford*, 56 Kan. 532, 44 Pac. 3, plaintiff was suing for compensation for having persuaded certain inhabitants of the city of Atchison and the city officials to pave certain streets of that city with asphalt. On a suit for compensation the defense was made that the contract was against public policy, and void. The court said:

"It is contended that the agreement alleged and proven was contrary to public policy, and void. An examination of the terms of the agreement does not indicate that any corrupt or improper influences were to be used, nor that the plaintiffs below agreed or were expected to use any secret or sinister means to effect the object of their employment. It is true that the compensation was a contingent one, but under the rule which obtains in this state the mere fact that the compensation is contingent will not render the agreement invalid nor bring the parties within the condemnation of the law." (p. 538.)

In discussing that case the court quoted from *McBratney v. Chandler*, 22 Kan. 692, as follows:

"There is no presumption that a contract is illegal. He who denies his liability under a contract which he admits having made must make the fact of its illegality apparent. The burden of showing it wrong is on him who seeks to deny his obligation thereon. The presumption is in favor of innocence, and the taint of wrong is matter of defense." (p. 695.)

This rule is again announced and the case of *Tool Company v. Norris,* supra, distinguished, while the case of *Oscanyan v. Arms*

*Co.*, supra, is quoted from with approval in *Paper House v. Printing Co.*, 85 Kan. 678, 118 Pac. 1056. In the case at bar McKnab testified that he did not expect or want anything illegal or immoral, and that he desired the thing presented as a straightforward business matter. Millspaugh testified that politics or political alignments were never mentioned, and that the matter was presented as a straightforward business proposition. The record discloses that Millspaugh did some work by way of securing plats and maps of the surrounding territory, presenting the record and standing of McKnab as a driller and general developer of oil properties. It certainly cannot be said from the record that Millspaugh did not do a great deal of legitimate work in connection with the leasing of this real estate to McKnab, and nothing has been pointed out that indicates the use of any wrong, sinister or corrupt practices on the part of Millspaugh.

Appellants urge that conversations testified to by appellee do not constitute a contract between appellee and McKnab enforceable for the compensation claimed by appellee. The substance of these conversations has been given heretofore in this opinion. What has been said heretofore on the first point raised applies to this point, and also to the one that the demurrer of appellants to the evidence should have been sustained.

Appellee introduced a statement as to the amount of royalty which had been obtained from the lease. No attempt was made to show what amount McKnab or the McKnab-Bess Oil Company had received. Evidence introduced by appellants showed that appellants received production from only a small part of the lease. This was due to the fact that part of the lease had been transferred to other parties by appellants in order to secure financial aid necessary to the development. In addition to this Millspaugh testified as to the value of his services. Appellants argue that this evidence was inadmissible. The evidence of appellee was that his compensation was to be determined by the value of the lease as shown by the development of it. The only way this could be shown was to introduce the amount of oil that had been taken from it. The fact that appellants had made a bad bargain or a good one in procuring others to assist in the development of the lease did not make it any less valuable from a standpoint of calculating what should be paid Millspaugh as a reasonable compensation for his services in obtaining the lease. It is to be presumed that McKnab, an experienced developer of oil

properties, took into consideration what he would be compelled to pay Millspaugh before he made arrangements with the other companies. The argument of appellants that it was error to permit appellee to testify as to what his services were worth cannot be sustained. Wigmore lays down the following rule:

"It would be a hard rule which would prevent a plaintiff from informing the jury of his own estimate of the value of his services; and the courts seem inclined to impose no terms as to his general familiarity with the class of services; that he had rendered them justifies listening to his opinion." (1 Wigmore on Evidence, § 715.)

This has been followed by many cases. See *Stevens v. Walton*, 17 Colo. App. 440, 68 Pac. 834; *Storms v. Lemon*, 7 Ind. App. 435, 34 N. E. 644, and *Foley v. Platt*, 105 Mich. 635, 63 N. W. 520.

Appellants point out the instruction of the court which submitted to the jury the question of the reasonable value of services of appellee. This instruction divided the liability of appellants into two parts—the reasonable value of the services rendered before the enactment of the law relating to the leasing of state lands, and what the evidence warranted he should recover for his services after that enactment. It is argued that the giving of this instruction submitted to the jury an element of the contract upon which the minds of the parties had not met. This argument is based on the assumption that the suit is upon an express contract. We have already said in this opinion that it is a suit where the recovery may be upon *quantum meruit*.

Other questions are urged by appellants, but the argument made to sustain them is answered by what has been said heretofore in this opinion. It is urged that the verdict is excessive. There was no evidence offered tending to show that appellee was entitled to any lesser amount. The argument really amounts to a contention that the verdict was not supported by the evidence. This question has already been answered in this opinion.

It is contended that counsel for appellee in his closing argument to the jury made a statement that was prejudicial and not supported by the evidence. We have examined this argument and fail to find anything prejudicial therein.

The judgment of the trial court is affirmed.