## BRADLEY v. AMERICAN RADIATOR & STANDARD SANITARY CORPORATION.

District Court, S. D. New York.
May 29, 1946.

Schlesinger & Schlesinger, of New York City (Maurice M. Kreis and Hyman Goldstein, both of New York City, of counsel), for plaintiff.

Sullivan & Cromwell, of New York City (Inzer B. Wyatt, of New York City, of counsel), for defendant.

LEIBELL, District Judge.

This action was commenced in the New York Supreme Court to recover on a contract of employment made between the plaintiff and the defendant in February 1942. On March 12, 1946, the action was removed to the Federal District Court for the Southern District of New York on the defendant's motion. On April 26, 1946, the defendant moved for an order, under Rule 12(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, dismissing the action because the complaint fails to state a claim upon which relief can be granted.

The plaintiff in his complaint alleges:

"1. That at all the times hereinafter mentioned, the plaintiff was engaged in the business of acting as manufacturers' representative for the sale of metal castings."

"3. That in or about the month of February 1942, the Chemical Warfare Department, of the United States Army, was in great need of cast iron noses for incendiary bombs, and requested the plaintiff to make efforts to locate qualified manufacturers willing and able expeditiously to produce such cast iron noses.

"4. That in or about the month of February 1942, the plaintiff, pursuant to such request of the Chemical Warfare Department, of the United States Army, brought to the attention of the defendant the requirement of the said Chemical Warfare Department, for said cast iron noses for incendiary bombs, and the defendant thereupon expressed an interest in manufacturing such cast iron noses, and requested the plaintiff to render such services as were necessary to enable the defendant to make a bid to the said Chemical Warfare Department, for the manufacture of such cast iron noses.

"5. The defendant then and there agreed to pay to the plaintiff for such services to be rendered by him, a sum equal to one-quarter of one cent for each of such noses manufactured by the plaintiff.

"6. That the plaintiff advised the said Chemical Warfare Department, of the United States Army, of his said employment by the defendant, and of the agreement of the defendant to pay to the plaintiff the said compensation of one-quarter of one cent per nose manufactured by the defendant, and the said Chemical Warfare

Department approved the said arrangement.

"7. That the plaintiff thereupon entered upon the duties of such employment and rendered services pursuant thereto, and communicated with the said Chemical Warfare Department, of the United States Army, and arranged with the said Chemical Warfare Department that an invitation to bid on the said cast iron noses should be sent to the defendant.

"8. Upon information and belief, that as a result of the said services rendered by the plaintiff, an invitation to bid on said cast iron noses was sent by the said Chemical Warfare Department to the defendant, and the defendant made bids and obtained orders from the said Chemical Warfare Department, for the manufacture of more than nineteen million (19,000,000) of the said cast iron noses.

"9. Upon information and belief, that the defendant, pursuant to such orders, manufactured the said cast iron noses, more than nineteen million (19,000,000) in number, and received payment therefor."

The plaintiff also alleges that he performed the terms of the agreement and that he has not been paid.

The basis of the defendant's motion is that the employment agreement called for the payment of a fee contingent upon the procurement of orders from the United States Army for war material and was therefore contrary to public policy as established by the decided cases and as declared by Executive Order No. 9001, 50 U.S.C.A.Appendix, § 611 note, 6 Fed.Reg. 6787, promulgated by the President December 27, 1941, pursuant to the First War Powers Act, 50 U.S. C.A.Appendix, § 601 et seq., enacted December 18, 1941. The motion raises the issue of the "illegality" of the contract of employment.

■ Rule 8(c) of the Federal Rules of Civil Procedure provides that in pleading to a preceding pleading, a defense of "illegality" shall be set forth affirmatively. The defendant has not yet answered the complaint, but has raised the issue of "illegality" by way of a motion to dismiss the complaint under Rule 12(b) on the ground that it appears from the allegations of the complaint that it fails to state a claim upon which relief can be granted, because the claim pleaded is based upon an illegal contract and is unenforceable. Where the complaint itself discloses the existence of a defense of "illegality" the motion under Rule 12(b) is properly made. For similar holdings as to other special defenses mentioned in Rule 8(c), see Kahn v. Cecelia Co., D.C., 40 F.Supp. 878 (the Statute of Frauds); Teren v. San Nap Pak Co., D.C., 49 F.Supp. 1023, 7 F.R.S. 12b.334 (the Statute of Limitations); 1 Moore, Federal Practice § 8.10 p. 225 (supp.) citing cases.

■ Contracts of employment, the performance of which involve the procurement of public contracts, have always been closely scrutinized by the courts; and where the compensation is contingent upon the success of the person specially employed to procure the public contract, the courts have held the employment contract to be against public policy and unenforceable. Providence Tool Company v. Norris, 2 Wall. 45, 17 L.Ed. 868; Hazelton v. Sheckels, 202 U.S. 71, 26 S.Ct. 567, 50 L.Ed. 939, 6 Ann. Cas. 217. The theory is that where the employment compensation is dependent upon success there is a tendency to exert improper influences to effect the successful procurement of the contract; that such a situation is objectionable; and that in passing upon the legality of the contract of employment it is immaterial whether improper means are contemplated or actually used in procuring the public contract. In Providence Tool Co. v. Norris, 2 Wall. 45, at page 54, 69 U.S. 45, at page 54, 17 L.Ed. 868 the Court, through Mr. Justice Field, said:

"The principle which determines the invalidity of the agreement in question has been asserted in a great variety of cases. It has been asserted in cases relating to agreements for compensation to procure legislation. These have uniformly been declared invalid, and the decisions have not turned upon the question, whether improper influences were contemplated or were actually used, but upon the corrupting tendency of the agreements. * * *

"There is no real difference in principle between agreements to procure favors from legislative bodies, and agreements to procure favors in the shape of contracts from the heads of departments."

This doctrine was reaffirmed in Hazelton v. Sheckels, 202 U.S. 71, 26 S.Ct. 567, 50 L.Ed. 939, 6 Ann.Cas. 217, in an opinion by Mr. Justice Holmes. See, also Crocker v. United States, 240 U.S. 74, 36 S.Ct. 245, 60 L.Ed. 533.

It has been urged that the doctrine of the Tool Company case was modified by the Supreme Court in Oscanyan v. Winchester Repeating Arms Co., 103 U.S. 261, 26 L.Ed. 539, so as to give approval to the payment of customary commissions for negotiating a sale of material to the government in an ordinary and proper manner. However, the Oscanyan case cites Tool Co. v. Norris with approval and quotes from that case. The language in the Oscanyan case is peculiarly applicable to a situation where the person claiming the commission is regularly engaged or employed by the defendant as a broker in the nature of a continuous occupation, to solicit business for the defendant. But where the employment is for the procurement of a specific contract and is made with a person not regularly engaged by the employer in soliciting business and the compensation is contingent upon success in procuring the public contract, the situation condemned by the doctrine of the Norris and Hazelton cases is present.

The language of the Supreme Court in the Providence Tool Co. and Hazelton cases is explicit and rather sweeping. Many courts have, as Williston observed (Contracts, Vol. Six, § 1729A), approved the employment of an agent, upon commission, where the government is the prospective buyer and there have been no improper or unfair dealings in connection with the sale. In Coyne v. Superior Incinerator Company, 2 Cir., 1936, 80 F.2d 844, the court in determining whether a contract was contrary to public policy because it provided for services to be rendered in the procurement of a public contract, compensation for which was contingent upon success, held that such agreements were not contrary to public policy solely because there was a possibility that corrupt influence might be used, but that there must be proof that something contrary to good morals was contemplated or done before the public policy rule applied. This theory has had substantial support in the courts of various states.[1]

In the case at bar the employment contract looked to the procurement of a public contract for the manufacture of certain specified war material; the compensation was contingent upon success; the agent was not regularly employed by the defendant to solicit orders.

The complaint tells us just how plaintiff came to be employed by the defendant. He was in the business of "acting as manufacturers' representative for the sale of metal castings"; the Army "was in great need of cast iron noses for incendiary bombs"; he was requested by the Chemical Warfare Department "to locate qualified manufacturers willing and able expeditiously to produce such cast iron noses"; he brought the requirement of the Department to the defendant's attention; "the defendant thereupon expressed an interest in manufacturing such cast iron noses and requested the plaintiff to render such services as were necessary to enable the defendant to make a bid"; "the defendant then and there agreed to pay to the plaintiff for such services to be rendered by him a sum equal to one-quarter of one cent for each of such noses manufactured by

---

[1] Lyon v. Mitchell, 36 N.Y. 235, 93 Am. Dec. 502; Bush v. Russell, 180 Ala. 590, 61 So. 373; Cary v. Neel, 54 Ga. App. 860, 189 S.E. 575; Stoner v. Stehm, 200 Iowa 809, 202 N.W. 530; Millspaugh v. McKnab, 134 Kan. 579, 7 P. 2d 51; Hall v. Anderson, 18 Wash.2d 625, 140 P.2d 266, 148 A.L.R. 760, Old Dominion v. Hamilton, 146 Va. 594, 131 S. E. 850, 46 A.L.R. 186; Bergen v. Frisbie, 125 Cal. 168, 57 P. 784. For the contrary view in support of the Supreme Court doctrine see Gesellschaft v. Brown, 164 App. D.C. 357, 78 F.2d 410, certiorari denied 296 U.S. 663, 56 S.Ct. 169, 80 L.Ed. 472; Glenn v. Southwestern Gravel Co., 74 Okl. 131, 177 P. 586; Steffey v. Bridges, 140 Md. 429, 117 A. 887; Jamieson v. Iles, 219 Ill.App. 432.

the plaintiff (defendant)." Upon these facts the employment contract comes clearly within the rule of the Norris and Hazelton cases, and it is just as clearly not within the exception contained in Executive Order 9001 in respect to bona fide agencies "maintained by the contractor for the purpose of securing business." Plaintiff's disclosure to the Department at the time that he had been thus employed by defendant does not eradicate the illegality of the employment.

On December 18, 1941 Congress enacted the First War Powers Act, 50 U.S.C.A.Appendix, § 611, 55 Stat. 839, empowering the President to authorize any department or agency of the Government exercising functions in connection with the prosecution of the war effort, to enter into contracts whenever he deemed such action would facilitate the prosecution of the war. Pursuant to this authorization and by Executive Order No. 9001, 6 F.Reg. 6787, the President authorized the War Department to enter into contracts in connection with the prosecution of the war. Several of the usual limitations and safeguards surrounding public contracts were specifically dispensed with to get the work under way expeditiously. However, for the protection of the interests of the United States, certain regulations and limitations were prescribed for exercising the contractual authority conferred by the Executive Order. In paragraph 5 of Title II of that order the following limitation is imposed:

"Every contract entered into pursuant to this order shall contain a warranty by the contractor in substantially the following terms:

"The contractor warrants that he has not employed any person to solicit or secure this contract upon any agreement for a commission, percentage, brokerage, or contingent fee. Breach of this warranty shall give the Government the right to annul the contract, or, in its discretion, to deduct from the contract price or consideration the amount of such commission, percentage, brokerage, or contingent fees. This warranty shall not apply to commissions payable by contractors upon contracts or sales secured or made through bona fide established commercial or selling agencies maintained by the contractor for the purpose of securing business."

One of the sources of public policy is the statutory enactment of the State. In United States v. Trans-Missouri Freight Ass'n, 166 U.S. 290, at page 340, 17 S.Ct. 540, at page 559, 41 L.Ed. 1007, Mr. Justice Peckham discussed the subject of "public policy" as follows:

"The public policy of the government is to be found in its statutes, and, when they have not directly spoken, then in the decisions of the courts and the constant practice of the government officials; but when the lawmaking power speaks upon a particular subject, over which it has constitutional power to legislate, public policy in such a case is what the statute enacts. If the law prohibit any contract or combination in restraint of trade or commerce, a contract or combination made in violation of such law is void, whatever may have been theretofore decided by the courts to have been the public policy of the country on that subject."

Executive Order 9001, promulgated by the President pursuant to the authority delegated to him by Congress, has the effect of a statute and is "part of the law of the land." Givens v. Zerbst, 255 U.S. 11, at page 18, 41 S.Ct. 227, 228, 65 L.Ed. 475; Armstrong v. United States, 80 U.S. 154, 20 L.Ed. 614.

In American Seating Company v. Zell, 322 U.S. 709, 64 S.Ct. 1053, 88 L.Ed. 1552, the Supreme Court considered a case involving a contract providing for contingent compensation for services in procuring a government contract and upheld the District Court in dismissing the action upon a motion for summary judgment. The per curiam opinion reads: "Seven (of the Justices) are of the opinion that the judgment (2 Cir., 138 F.2d 641) should be reversed and the judgment of the District Court (50 F.Supp. 543) affirmed—four because proof of the contract alleged in respondent's affidavits on the motion for summary judgment is precluded by the applicable state parol evidence rule, and three because

the contract is contrary to public policy and void, see Providence Tool Co. v. Norris, 2 Wall. 45, 54, 17 L.Ed. 868; Hazelton v. Sheckels, 202 U.S. 71, 79, 26 S.Ct. 567, 568, 50 L.Ed. 939, 6 Ann.Cas. 217; Executive Order No. 9001, Tit. II, par. 5, 6 Fed. Reg. 6788; War Department Procurement Regulations, 10 Code Fed.Reg. (Cum.Supp.) § 81.1181." It should be noted that the question of the illegality of the employment contract was not raised in the District Court or in the Circuit Court of Appeals, and that the decisions of those courts turned on the application of the parol evidence rule.

In Reynolds v. Goodwin-Hill Corporation, 2 Cir., 154 F.2d 553, 555, the appellate court in determining the validity of a contingent fee contract did not directly pass upon the question of public policy, but found that the plaintiff was within the exception of a War Department Procurement Regulation, which was based on the Executive Order. However, the Court made the following observation:

"The purpose of the section is reasonably plain: the payment of contingent fees was permitted when made to an agent employed generally to drum up business for the contractor, presumably because it was thought wise to allow contractors to do business in their accustomed way, in spite of the possibility that the inducement of a commission might on occasion result in abuses. But it was also thought that to employ persons to procure specific contracts upon a contingent fee, was likely to result in selecting those who had, or were supposed to have, some special access to officials; and that this could not be tolerated."

The opinion of the three judges of the Supreme Court in the American Seating Co. case and the import of the language used by Judge Learned Hand in the Reynolds case support the view that a contingent fee employment contract looking toward the procurement of a specific contract for war materials by a person not regularly engaged by the contractor in securing business, violates the Executive Order and is invalid as contrary to public policy. The evil that the Executive Order was intended to prevent requires a strict application of the provisions of the order to the case at bar.

The plaintiff contends that there is nothing in the complaint to indicate that the contract between the defendant and the Government was made pursuant to Executive Order No. 9001. In view of the Norris and Hazelton cases this is immaterial, but if the determination were to rest upon a public policy as established by the Executive Order No. 9001 alone, the conclusion would be the same. The First War Powers Act authorizing the President to lift certain restrictions on the making of contracts and pursuant to which Executive Order No. 9001 was promulgated, was enacted on December 18, 1941. The Executive Order was promulgated on December 27, 1941. The contract between the plaintiff and the defendant was made subsequent to those dates, in February 1942. The contract between the Government and the defendant of course was made subsequent to those dates. There was nothing discretionary about including the provision relating to warranties against contingent fees. The inference is justified that any contract made pursuant to Executive Order No. 9001 would contain such a provision. There is nothing indefinite about the scope of the Executive Order itself. It applied to war contracts—contracts made by the War and Navy Departments and the U.S. Maritime Commission for all types of things necessary and appropriate or convenient for the prosecution of the war. The contract of the defendant with the Government was of that type. But whether or not the contract between the defendant and the Government contained the provision, the public policy of Executive Order No. 9001 would apply to and condemn plaintiff's contract of employment by defendant.

The defendant's motion to dismiss the complaint for failure to state a claim upon which relief can be granted is, therefore, granted. Settle order.