No. 31,976

LESLIE STEWART, *Appellee*, v. THE FOURTH NATIONAL BANK IN WICHITA, *Appellant*.

(39 P. 2d 918)

Opinion filed January 26, 1935.

*Charles G. Yankey, Harvey C. Osborne, John G. Sears, Jr.,* and *Verne M. Laing,* all of Wichita, for the appellant.

*Ray H. Tinder* and *Otto R. Souders,* both of Wichita, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action upon an oral agreement to recover the reasonable. value, or *quantum meruit*, of information furnished, which was in the possession of the plaintiff prior to the time of making the agreement, and from which information the defendant bank was enabled to recover a substantial part of the loss occasioned by an erroneous credit on the books of the bank. A trial was had before a jury and a verdict and judgment were rendered for the plaintiff for $1,000, from which judgment the defendant bank appeals.

The appellant summarizes the points involved in the appeal as follows:

"1. The alleged agreement was too indefinite to establish an enforceable contract.

"2. The appellee gave the information voluntarily without promise of compensation, and the claimed services were performed prior to the offer of reward.

"3. The alleged agreement was contrary to public policy and therefore void.

"4. Incompetent and prejudicial evidence was admitted to prove the value of appellee's services."

The following is the testimony of the plaintiff as to the oral contract she made over the telephone with John McLean, a vice president of the bank, on July 15, 1930:

"I told him I had some information to give the bank that I thought would be very valuable to them, concerning the overpayment of one of their depositors. I told him that this was not a small sum of a few hundred dollars or a thousand dollars, but that it was a staggering amount, and that I would give them the information and thought it would be worth something if the bank could recover on that. He told me to go ahead and give him the information and the bank would take it up, and if they were able to realize anything on my information they would be glad to do the right thing for me and be liberal. I also told them if they checked it up and found my information was correct that I also had some more information that I thought would be valuable to the bank. I told him that the information that I had was to the effect that they had overpaid Lawrence H. Moore, otherwise known as L. H. Moore."

At the time of the trial John McLean was deceased, and there was no conflicting evidence offered as to the terms of the agreement as stated by plaintiff. The defendant introduced the testimony of many witnesses to show that no such conversation over the telephone was had or could have been had, yet three or more of the

officers of the defendant bank testified that the first information the bank, or its officers, had as to such erroneous credit was from the plaintiff. The testimony further shows that the auditor of the bank went to the home of the plaintiff the same day that she says the telephone conversation took place to get details of the information, especially as to where the money improperly withdrawn by L. H. Moore was invested, and also shows that two court actions were commenced by the bank within two days thereafter in an attempt to recover portions of this wrongfully withdrawn fund, one action in Kansas, and the other in Oklahoma.

The evidence shows that one J. H. Moore made several deposits in the defendant bank which were erroneously credited to the account of L. H. Moore, another depositor in the bank, and the latter wrongfully withdrew from the bank by reason of this erroneous credit the sum of $12,269.52. That approximately $8,000 of it was used by said L. H. Moore in the purchase and improvement of a property in Sedgwick county, Kansas, which property was recovered by the bank, and also twenty shares of building and loan stock in Oklahoma, for which stock the defendant bank received $2,020. There was some evidence to show that the real property recovered by the bank may not at the time of recovery have been worth the $8,000 it cost L. H. Moore. One of the officers of the bank testified that after deducting all expenses involved in the recovery the bank realized from it $5,796.

Appellant cites on the first point involved many cases concluding that the contract upon which recovery was sought was too indefinite to establish or be an enforceable contract. Such might have been said as to the contract here under consideration, if the plaintiff had attempted to enforce it as a full and complete contract in itself. The plaintiff in her petition specifically acknowledged its incompleteness in itself by proper allegations for *quantum meruit*, which of course would not have been necessary if the promise and agreement had contained a definite sum as compensation. Some of the cases cited have reference to enforcing liens on lost property, when discovered, after a reward had been offered. The case of *Nichols v. Coppock*, 124 Kan. 652, 261 Pac. 652, is cited where it was held that the sale of property on "easy terms" was too indefinite. The missing feature there could not be supplied under *quantum meruit* and it was not so attempted. That is very different from employing

one and agreeing to pay him reasonable wages. His contract is definite and an action for *quantum meruit* is decidedly proper.

In the case of *Berry v. Craig,* 76 Kan. 345, 91 Pac. 913, it was held:

"In an action for a commission a real-estate broker may join a count for the reasonable value of his services with a count based upon an express contract to pay a stated commission." (Syl.)

In the opinion it was said:

"The two counts were entirely consistent. Neither contradicted the other. The facts stated in the first might be true and the facts stated in the second also might be true. If an express contract existed, recovery could not be had upon an implied contract; but to meet possible exigencies of the proof the plaintiff had the right to go to the jury upon both sets of allegations." (p. 346.)

In *Williams v. Jones,* 105 Kan. 282, 182 Pac. 391, it was said:

"The findings in question were not that the defendant had said in so many words that he would pay for the plaintiff's services, but that in the situation the jury found to exist an agreement to that effect was reasonably to be implied. A mere request or direction to the defendant to do the work would be enough to warrant an inference that it was to be paid for, in the absence of evidence that it was to be gratuitous, or that the plaintiff was to be compensated in some other manner." (p. 283.)

In *Merywethers v. Youmans,* 81 Kan. 309, 106 Pac. 1071, it was held:

"It is competent for the plaintiff to set up an express contract to pay specified wages for work done and also that the work was reasonably worth the amount claimed." (Syl. ¶ 3.)

It is said in 28 R. C. L. 694:

" . . . the generally recognized doctrine is that although a contract is invalid because the minds of the parties did not meet as to some of the essential terms thereof, yet a party thereto who furnishes material or renders services to the other party, relying on the terms as he understood them, is entitled to recover what the labor furnished was reasonably worth, even though that is in excess of the contract price. This is true where the minds fail to meet as to the compensation to be paid."

In the case of *Millspaugh v. McKnab,* 134 Kan. 579, 7 P. 2d 51, it was held:

"Where there is an express contract of employment to obtain an oil and gas lease which provides that the compensation of the employee is to be graduated, determined and established by the success of his endeavors and the value of the lease, as shown by developments thereon, and the lease is obtained, recovery may be had for services rendered on the basis of *quantum meruit.*" (Syl. ¶ 1.)

The general rule is stated in 22 R. C. L. 47 as to information, both in possession of one of the contracting parties, as well as that to be ascertained afterwards, in which it is described as property and subject to contract.

As to a consideration for the contract in this action, a mutual promise or a promise for a promise is a consideration, as stated briefly in 13 C. J. 328.

The case of *Reed v. Golden*, 28 Kan. 632, was where the information furnished was already in the possession of the party offering to furnish it, and it was there held:

"A party who has discovered the locality of an oil spring, a mine, or other valuable properties, may sell the knowledge thus acquired, and such information is a sufficient consideration for a purchaser's promise to pay." (Syl. ¶ 1.)

The case of *Berkey v. Smith*, 138 Kan. 792, 28 P. 2d 763, was where the plaintiff had instructed defendant in the art of embalming and funeral directing, and certified to the same so that he could enter an embalming school and receive a license as a practical embalmer and funeral director, upon a written agreement that he should not enter into competition with him within ten miles of his place of business while he remained in that business at that place. The defendant, however, in the name of his wife, started a few months later an embalming business in the same town, and the action was to enjoin him. This court in the opinion said:

"Appellant contends the contract was without consideration. The point is not well taken. The contract as written contains mutual promises, and it is fundamental that the consideration for a promise may be a return promise. (Restatement of the Law of Contracts, § 75.) . . . We see nothing in the contract as written, or as enlarged by the finding of the court, which renders the contract illegal or void, as against public policy, nor as tending to show that the consideration was insufficient. (A. L. I. Restatement, Contracts, §§ 83, 84.)" (p. 795.)

The second point involved, as outlined by appellant, is as follows:

"The appellee gave the information voluntarily without promise of compensation, and the claimed services were performed prior to the offer of reward."

This is correct according to the testimony of defendant's witnesses who were not given credence by the jury. And since there was sufficient evidence to support the verdict of the jury, we must accept that which the jury credited, and it negatives the above statement as to the information being given without a promise of

compensation and also negatives the second part of the statement as to the services being performed prior to the offer of reward. The plaintiff's evidence on this point, which the jury credited, leaves this question undebatable. It is as follows:

"He told me to go ahead and give him the information and the bank would take it up, and if they were able to realize anything on my information they would be glad to do the right thing for me and be liberal. I also told them if they checked it up and found my information was correct that I also had some more information that I thought would be valuable to the bank. I told him that the information that I had was to the effect that they had overpaid Lawrence H. Moore, otherwise known as L. H. Moore."

The third point involved among the errors assigned is that the agreement was contrary to public policy and therefore void. Appellant cites numerous authorities where such contracts have encouraged extortion, and have been denominated as common barratry and champerty, citing R. S. 21-745, being our statute on common barratry in our criminal code, which offense is generally defined as that of frequently exciting and stirring up quarrels either at law or otherwise. This feature of public policy turns largely on the facts and circumstances of the case. No one rule or statement will determine it.

It is argued that it was the duty of the plaintiff to furnish the information she did as soon as it came to her knowledge and again that it was wrong and against public policy to agree to furnish it for compensation. Some of the cases cited hold very properly that it may be against public policy to agree to go out and gather information that will produce litigation. The proposition here is that I have heard that you have lost by mistake several thousand dollars; if you care for such information, I will tell you where it is said you have lost it, and where it is said you may be able to recover some of it. Most cases involving public policy include work or services to be performed after the making of the agreement, which work in itself is what may be against public policy. Among the cases cited there does not seem to be any precedent as to divulging information already in one's possession, not received in trust or confidence, which is of benefit to the other contracting party. In the Millspaugh cases, *supra*, it was held:

"A contract to obtain a lease upon state land from the board of administration, which provides that the compensation shall depend upon the success of the efforts to obtain the lease, is not void as against public policy where no immoral, illegal or corrupt acts are claimed or shown." (Syl. ¶ 2.)

It has long been the rule in this and other states that there is no presumption that a contract is illegal, and its illegality must be made to appear from the facts and circumstances involved. (See *M' Bratney v. Chandler*, 22 Kan. 692, and *Paving Co. v. Botsford*, 56 Kan. 532, 44 Pac. 3.)

The last point raised is in the use of incompetent and prejudicial evidence to prove the value of the services rendered by the plaintiff. An expert witness was called, shown to be familiar with all kinds of services rendered in the way of making collections by attorneys or collection agencies, and compensation paid for such services where based on the recovery made, and he was asked a hypothetical question based on the evidence introduced on the subject of the information furnished and recovery had. We think this was proper and well within the rule stated in *Telegraph Co. v. Morris*, 67 Kan. 410, 73 Pac. 108. The witness used was an attorney, but the qualification and the hypothetical question were not limited to his professional work along collection lines.

We conclude that the rulings of the trial court on the four points here considered were not erroneous.

The judgment is affirmed.