No. 40,102

Gerald D. Miller, *Appellant*, v. International Harvester Company of America, a Corporation, *Appellee.*

(298 P. 2d 279)

Opinion filed June 9, 1956.

*Dale M. Stucky,* of Wichita, argued the cause, and *Howard T. Fleeson, Homer V. Gooing, Wayne Coulson, Paul R. Kitch, Donald R. Newkirk, Gerrit H. Wormhoudt, Theodore C. Geisert,* and *Robert J. Hill,* all of Wichita, were with him on the briefs for the appellant.

*George C. Spradling,* of Wichita, argued the cause, and *W. F. Lilleston, Henry V. Gott, George Stallwitz, Ralph M. Hope, Richard W. Stavely,* and *Charles S. Lindberg,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This was an action to recover on a contract between the parties whereby plaintiff (appellant) alleged that he disclosed an idea to defendant (appellee) with the understanding and agreement that defendant would not make use of it without compensating him therefor. The appeal is from orders of the trial court sustaining a motion to strike certain portions of the petition and a demurrer to the petition, as amended.

The petition, as amended, consists of thirteen paragraphs. Attached thereto and made a part thereof is correspondence between the parties, consisting of eighteen letters. For the purpose of this appeal, insofar as necessary, the allegations and exhibits will be very briefly stated: Plaintiff purchased from defendant a new 50-AW baler which failed to operate properly, due to the fact that about ten per cent of the time the wire used for binding the bales slipped down the shaft or shank of the tying mechanism and formed a half-hitch, preventing the wire from slipping through the mechanism, with the result that the wire broke at or near the knot, scattering the contents of the bale on the ground. Defendant's dealers, service managers and engineers were unable to remedy the situation. The same difficulty occurred throughout the nation. Because of this, defendant's baler would not perform the function for which it had been designed and sold. Purchasers flooded defendant with complaints. Defendant and its dealers were threatened with suits for breach of implied warranty of its fitness, and defendant's good will was damaged.

Plaintiff, in an effort to salvage his investment in the baler, devoted himself to devising some method of avoiding the difficulty to the end that the machine would function. After much experi-

mentation, he developed an idea which he embodied in a device which solved the problem, and rendered the otherwise worthless machine usable. He wrote to defendant explaining the difficulty with the baler, stating he had "designed a piece" that would solve the difficulty, and said, "If you think this item can be used, I would like to hear from you." Defendant immediately, by letter, invited plaintiff to mail drawings or sketches and a description of his development for its study with the understanding that "in accepting any data you may send us we incur no obligations other than those of making a careful study of your design and of advising you regarding our interest. If we are interested no use will be made of novel and patentable information until arrangements satisfactory to you have been negotiated."

Subsequently, plaintiff orally disclosed his idea to defendant in Chicago with the understanding and agreement that defendant would not make use of it without agreeing with plaintiff on the character and amount of compensation to be paid him for the idea. After the disclosure was made, defendant, by letter, acknowledged the meeting at Chicago and stated that one of its engineers felt plaintiff's difficulty with his baler resulted from lack of proper adjustment, but plaintiff's device would be tested in its Memphis works, stating: "As soon as the results of these tests are at hand we will inform you as to whether or not we are interested."

Defendant, by letter, advised plaintiff that if his device was the correct remedy for various difficulties experienced on the baler, defendant would undoubtedly negotiate with him for the use of his invention, and assured plaintiff that no attempt would be made to steal it. Defendant, in response to a letter from plaintiff, wrote: "When an idea, a pending patent, or granted patent is submitted to us, it is given every consideration. If in testing it proves to be desirable, the person submitting the idea is contacted and a satisfactory arrangement is made. It is not our policy to infringe upon anyones idea or patent . . . we do not desire to leave you with the impression that we want to utilize your suggestion without proper reimbursement to you." The petition further alleged:

"9. Concisely stated, plaintiff's idea for solving the difficulty was to prevent the wire used for binding the bales from slipping down into the throat of the twisting mechanism by means of a ledge shelf or shoulder. The particular devices exhibited by plaintiff to defendant had the ledge, shelf or shoulder placed on the twister hook of the tying mechanism, but plaintiff explained to defendant that since the hook and the shank operated together as a unit

the desired result could be obtained equally well by placing the ledge or shoulder on the shank instead of the hook.

"[10. The idea thus disclosed by plaintiff to defendant was concrete and novel and completely solved the difficulty.]

"[11] 10. Defendant advised plaintiff that it had decided against adoption of plaintiff's idea, because it had developed a different and dissimilar device in its own engineering department. *Exhibits E, H, I, O, and Q are copies of defendant's letters so advising plaintiff.*

"[12] 11. In the spring of 1953, defendant furnished to every purchaser of 50-AW balers, free of charge, a device designed to prevent the difficulty above described. Plaintiff saw one of these devices on April 10, 1953, and learned for the first time that the device so furnished by defendant embodied plaintiff's idea of using a ledge or shoulder to prevent the wire from sliding down into the throat of the twisting device. [In an effort to avoid payment of compensation for plaintiff's idea by] *In* attempting to alter so far as possible the appearance while retaining the principle of the device exhibited to defendant by plaintiff, defendant located the ledge or shoulder on the shank rather than on the hook. The two devices are, however, equivalents, both embodying plaintiff's idea and achieving the same result in the same way."

The petition closed with a prayer for the fair and reasonable value of the services performed and the idea furnished by plaintiff to defendant. Paragraph 10 and that portion of paragraph 12, in brackets, were stricken by the trial court on motion of defendant as redundant and immaterial, and the paragraphs renumbered. The defendant interposed a demurrer to the petition, as amended, on the ground it failed to state facts sufficient to constitute a cause of action, which was sustained by the trial court. It is from these rulings that plaintiff appeals.

We will first consider the order striking paragraph 10 from the petition. The record does not disclose on what theory the trial court did so. It may be said, after stating the facts plaintiff had a right to allege that the idea thus disclosed was concrete, novel and completely solved the difficulty, and the court erred in striking paragraph 10 from the petition. However, it was not error for the court to strike the bracketed portion from paragraph 12 of the petition as being argumentative.

Defendant states there are three questions involved in considering whether the trial court erred in sustaining the demurrer: Do the amended petition and exhibits show facts (1) on which a meeting of the minds can be inferred; (2) from which a consideration for the alleged contract can be inferred, and (3) from which the use of plaintiff's idea can be inferred?

It is alleged that plaintiff disclosed his idea to defendant with the

understanding and agreement that it would not make use of the idea without agreeing with plaintiff on the character and amount of compensation to be paid for it, and that the defendant breached its agreement and used the device so furnished by embodying plaintiff's idea by altering, so far as possible, the appearance while retaining the principle of the device exhibited, and that the device furnished by plaintiff and the one used by defendant were equivalents, both in embodying plaintiff's idea and in achieving the result in the same way.

In the somewhat analagous case of *Stewart v. Fourth Nat'l Bank*, 141 Kan. 175, 39 P. 2d 918, plaintiff called the bank and said she had information that was valuable to the bank concerning an overpayment by it to a depositor. The bank official told her to give him the information, and plaintiff testified, "if they were able to realize anything on my information they would be glad to do the right thing for me and be liberal." She gave the information which consisted simply of pointing out to the bank that if it would look at the records it would find deposits were credited to J. H. instead of L. H. Moore. The bank recovered from the depositor who had been benefited by the mistake. We held:

"An agreement to furnish information already in one's possession, which may be beneficial to the other party, upon his agreement to do the right thing and be liberal in the way of compensation therefor, if he is able to realize anything on the information, is not too indefinite to establish an enforceable contract to recover *quantum meruit.*" (Syl. ¶ 1.)

In *Williams v. Jones,* 105 Kan. 282, 182 Pac. 391, we held that a mere request or direction to a party to do work would be enough to warrant an inference that it was to be paid for, in the absence of evidence that it was to be gratuitous, or that the party was to be compensated in some other manner.

The petition alleges the contract contained mutual promises, *i. e.,* that plaintiff was to disclose his idea to defendant and furnish sketches showing the device; defendant would not make use of the idea without agreeing with him as to the character and amount of compensation to be paid for the idea. The contract as pleaded contained mutual promises and it is fundamental that the consideration for a promise may be a return promise. (*Stewart v. Fourth Nat'l Bank,* supra.). It is true, contracts should be definite and certain, and generally a definite price or compensation is an essential element of a binding contract. However, the rule with respect to contracts executed, except for payment, is that there arises an

implied promise to make reasonable payment. (*Brunner v. Stix, Baer & Fuller Co.*, 352 Mo. 1225, 181 S. W. 2d 643.)

A review of the petition and the attached exhibits discloses facts sufficient to constitute a cause of action against the defendant. From the facts pleaded, a meeting of the minds, consideration, and the use of plaintiff's idea can be inferred. The petition charged that plaintiff developed an idea which he embodied in a device which would solve defendant's problem; that he advised the defendant company which immediately made a request of plaintiff for sketches of the device in order that it might be tested to determine if it would correct the difficulty in the baler; that it would not use the idea or device without first agreeing with plaintiff as to the character and amount of compensation to be paid for the idea, and that defendant breached the agreement in attempting to alter, as far as possible, the appearance while retaining the principle of the device exhibited, and embodied plaintiff's idea in the device it used, thereby achieving the same result and, as a consequence of these allegations, a cause of action was stated, and the trial court erred in sustaining the demurrer.

The judgment of the trial court is reversed and the case is remanded with directions to reinstate paragraph 10 of the petition and set aside its order sustaining defendant's demurrer to plaintiff's petition, as amended.