## Mark FEASTER and Janice Feaster, Plaintiffs,

v.

## FIRST FEDERAL SAVINGS BANK OF KANSAS, WELLINGTON, KANSAS, a Corporation, Defendant.

### No. 88–1015–C.

United States District Court, D. Kansas.

Oct. 3, 1989.

Alan Joseph, and Gerald W. Scott, Wichita, Kan., for plaintiffs.

James M. Armstrong, Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

This case comes before the court on defendant's motion for summary judgment. It is an action to enforce an alleged oral contract of First Federal Savings Bank of Kansas to purchase shares of stock of Mark and Janice Feaster. The pretrial conference order was filed on June 2, 1989, supersedes all pleadings, and controls the subsequent course of this case, including this motion for summary judgment. Oral argument would not materially assist the court in its determination of this motion, and defendant's request for oral argument is therefore denied.

In ruling on a motion for summary judgment, the trial court conducts a threshold inquiry of the need for a trial and grants summary judgment where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." 477 U.S. at 251–252, 106 S.Ct. at 2512. There is no genuine issue for trial unless there is sufficient evidence—significantly probative or more than merely colorable—favoring the nonmoving party for a jury to return a verdict for that party. 477 U.S. at 249, 106 S.Ct. at 2510. Where there is but one reasonable conclusion as to the verdict and reasonable minds would not differ as to the import of the evidence, summary judgment is appropriate. 477 U.S. at 250, 106 S.Ct. at 2511.

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1" (citation omitted.) *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). "The movant must identify those portions of 'the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits if any' to demonstrate the absence of a genuine issue of material fact. Fed.R.Civ.P. 56(c)." *Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d 342, 345 (10th Cir.1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987). There is no requirement in Fed.R.Civ.P. 56 that the moving party negate the opponent's claim. *Celotex*, 477 U.S. at 329, 106 S.Ct. at 2555. The movant's burden is proving that there is an absence of a genuine issue of material fact "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." 477 U.S. at 325, 106 S.Ct. at 2554.

For the sole purpose of ruling on defendant's motion for summary judgment, the following material facts are uncontroverted:

Plaintiff Mark Feaster is the former president and chief executive officer of defendant First Federal Savings Bank of Kansas. Mr. Feaster was also a director of First Federal. He resigned as president of First Federal, and as a director thereof, in the fall of 1985.

In 1976, First Federal applied for approval to the Federal Home Loan Bank Board, the federal supervisory authority over federal savings and loan associations, to convert First Federal from a mutual association to a stock association. Pursuant to that request for approval, First Federal submitted to the Federal Home Loan Bank Board for approval a document entitled "Amendment No. 1 to Application for Approval of Conversion." [Plan of Conversion]. This Plan of Conversion contained the by-laws for First Federal, which were approved by the Federal Home Loan Bank Board. Those bylaws contained the following pertinent restrictions on First Federal's repurchase of its stock.

> Restrictions on Repurchase of Stock and Payment of Cash Dividends
>
> The Association may not repurchase any of its stock from any director, officer, former director, officer or associate thereof, except in the event of an offer to repurchase by the Association on a pro rata basis to all shareholders of the Association, except that the Association may repurchase qualifying shares of a director.

Plaintiff Mark Feaster had signed the original Plan of Conversion in 1976 as First Federal's principal financial officer. He was aware at that time that First Federal could not, in any such proposed purchase, violate any federal rules or regulations, or any of First Federal's articles of incorporation or bylaws. Plaintiff Mark Feaster testified at his deposition that the first sentence of the paragraph containing the restriction on repurchase is an absolute prohibition against the Association repurchasing stock from an officer or director or an associate, with the exception of qualifying shares or a pro rate repurchase of all the stock. He further testified that the first sentence would preclude First Federal from repurchasing his stock.

Plaintiffs contend that during September, 1985, Plaintiff Mark Feaster and officers of defendant First Federal negotiated an agreement for the defendant to purchase 9,703 [the pretrial order reflects 8,156] shares of stock of the defendant

corporation from plaintiffs for $20.00 per share. The exchange of the certificates of stock and the payment of $20.00 per share was to take place in July, 1986. Plaintiffs contend that First Federal breached this contract and has refused to purchase their stock as agreed.

The Plan of Conversion provides that after "submission of the Plan and proxy material to the members, the Plan may be amended by a two-thirds vote of the Association's Board of Directors only with the concurrence of the FSLIC." It was Plaintiff Mark Feaster's understanding that the Plan could be amended to eliminate the restriction on repurchase. (Feaster Depo., pp. 62–63).

For purposes of this court's determination of the summary judgment motion, First Federal states that the court may take as true the fact that such an oral agreement to purchase the stock did occur. However, if the motion for summary judgment should be denied, First Federal intends to deny that an agreement was ever reached between the parties.

Defendant First Federal contends it is entitled to summary judgment as a matter of law based on two grounds. The first ground is that the oral agreement to repurchase the plaintiffs' stock is against public policy. The second ground is that the contract cannot be enforced based on the doctrine of mutual mistake.

*Public Policy*

■ The defendant argues that the restrictions contained in the subject paragraph of the bylaws are intended to protect the public interest and particularly the interest of depositors in a federally insured savings and loan association. This conclusory statement is not supported by citation to any applicable statute or case law.

"An agreement is against public policy if it is injurious to the interests of the public, contravenes some established interest of society, violates some public statute, or tends to interfere with the public welfare or safety." *Hunter v. American Rentals,* 189 Kan. 615, 618, 371 P.2d 131 (1962). "It has long been the rule ... that there is no presumption that a contract is illegal, [vio-

lative of public policy] and its illegality must be made to appear from the facts and circumstances involved." *Stewart v. Fourth Nat'l Bank*, 141 Kan. 175, 181, 39 P.2d 918 (1935). (Brackets added.) "The presumption is in favor of innocence and the taint of wrong is a matter of defense." *In re Estate of Shirk*, 186 Kan. 311, 326, 350 P.2d 1 (1960). The defendant First Federal has the burden to rebut the presumption.

The court can find nothing inherently violative of public policy in allowing First Federal to repurchase the plaintiffs' shares of stock.

> A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly outweighed in the circumstances by the public policy against the enforcement of such terms.

Restatement (Second) of Contracts § 178(1) (1981). It is primarily "the prerogative of the legislature to declare what agreements and acts are contrary to public policy, and to forbid them." 17 Am.Jur.2d *Contracts* § 177 (1964).

> [I]n the determination of whether an agreement is against public policy there must be kept in view the rule that where there is no statutory prohibition, the courts do not readily pronounce an agreement invalid on the ground of policy or convenience, but, on the contrary, are inclined to leave men free to regulate their affairs as they think proper. In other words, the courts will not declare an agreement void on the ground of public policy unless it clearly appears to be in violation of the public policy of the state.

17 Am.Jur.2d *Contracts* § 178 (1964). The court finds that the defendant has failed in its burden to rebut the presumption that its contract to repurchase the plaintiffs' shares of stock is legal and not against public policy, and will not grant the defendant's motion for summary judgment on this ground.

*Mutual Mistake*

■ The second ground advanced by the defendant is that enforcement of the con-

tract is absolutely barred by the doctrine of mutual mistake. The general rule on mutual mistake can be found at Restatement (Second) of Contracts § 152 (1981):

> (1) Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of mistake under the rule stated in § 154.
> (2) In determining whether the mistake has a material effect on the agreed exchange of performances, account is taken of any relief by way of reformation, restitution, or otherwise.

The mutual mistake the defendant contends occurred in this case is that both parties were under the mistaken belief at the time of contracting that First Federal could repurchase plaintiffs' stock. And yet if, as defendant contends, plaintiff Mark Feaster knew of the restrictive provision on repurchase contained in the bylaws at the time of contracting, then certainly the defendant could also be charged with knowledge of that restrictive provision, and no mutual mistake occurred. Furthermore, if the bylaws could be amended to allow for such a repurchase, it is simply not true that the defendant could never repurchase the plaintiffs' stock. Furthermore, under the doctrine of mutual mistake the contract would be voidable, not void. If the defendant is seeking to reform the agreement on grounds of mutual mistake it has the burden of proving the mistake was mutual. *Schnug v. Schnug*, 203 Kan. 380, 384, 454 P.2d 474 (1969).

The court finds that material questions of fact remain in this case and that the defendant is not entitled to summary judgment as a matter of law.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment is denied.