IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 121,765

FIRST SECURITY BANK,
*Appellee*,

v.

DAVID BUEHNE and LINSAY BUEHNE, et al.,
*Appellants*.

SYLLABUS BY THE COURT

1.

Contracts are presumed legal; the burden to prove otherwise—including a claim that a contract violates public policy—rests on the party challenging the contract. A contract's illegality must be made to appear from the facts and circumstances involved.

2.

A contract violates public policy if it is injurious to the interests of the public, contravenes some established interest of society, violates some public statute, or tends to interfere with the public welfare or safety.

3.

Although freedom of contract is limited by other public policy and legislation, the paramount public policy is that freedom to contract is not to be interfered with lightly.

4.

Statutes of limitations constitute expressions of public policy on litigation rights. The policies served by these statutes include the protection of parties from defending against stale claims after evidence has become unavailable.

1

5.

In a commercial promissory note, a prospective waiver of the statute of limitations made at the time of the note's creation does not offend public policy where the waiver purports to operate "to the full extent permitted by law" and where a borrower claims no prejudice arising from the lender's delay in bringing suit.

Review of the judgment of the Court of Appeals in an unpublished opinion filed September 18, 2020. Appeal from Meade District Court; E. LEIGH HOOD, judge. Opinion filed December 30, 2021. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Zachary D. Schultz*, of Schultz Law Office, P.A., of Garden City, argued the cause and was on the briefs for appellants.

*James C. Dodge*, of Sharp McQueen, P.A., of Liberal, argued the cause and was on the brief for appellee.

*Kersten L. Holzhueter,* of Spencer Fane LLP, of Kansas City, Missouri, for amicus curiae Kansas Bankers Association.

The opinion of the court was delivered by

WILSON, J.:  After a panel of the Kansas Court of Appeals affirmed the district court's entry of summary judgment for First Security Bank ("FSB") in its foreclosure action against David and Linsay Buehne, the Buehnes petitioned this court for review. *First Sec. Bank v. Buehne*, No. 121,765, 2020 WL 5580498 (Kan. App. 2020) (unpublished opinion). The Buehnes raised two issues for our consideration, both relating to the statute of limitations. We conclude that the specific contractual clause waiving the defense of the statute of limitations, as set forth in the Buehnes' commercial promissory note with FSB, was not void as against public policy. Consequently, we do not address

2

the district court's conclusions that the five-year statute of limitations relating to FSB's action, K.S.A. 60-511(1), only began to run in 2014. We thus affirm the Court of Appeals and the district court.

FACTS AND PROCEDURAL BACKGROUND

The facts set forth by the panel are not disputed by the parties, and we incorporate them by reference. Briefly stated, the Buehnes executed a commercial promissory Note with FSB in June of 2005. The Note was secured in part by a security agreement and in part by a mortgage covering certain real property in Meade County, Kansas. The Note included a provision labeled "Waiver of Certain Rights," which read:

"If the Lender delays enforcement or decides not to enforce any of the provisions of this Note, including my Note to make timely payments, it will not lose its right to enforce the same provisions later nor any other provisions of this Note. I waive the right to receive notice of any waiver or delay or presentment, demand, protest, or dishonor. *I also waive any applicable statute of limitations to the full extent permitted by law* and I waive any right I may otherwise have to require the Lender to proceed against any person or security before suing me to collect this loan." (Emphasis added.)

In the Note, a box marked "obligation is payable on demand" was checked. The Note otherwise set forth a schedule of payments including "4 payments of interest only beginning 7-28-05, 240 payments of $2,524.09 beginning 11-28-05."

The Buehnes made no payments on the Note. Beginning on May 26, 2006, FSB sent the Buehnes a series of overdue notices by mail. FSB continued to send notices at somewhat irregular periods over the next several years.

FSB ultimately filed suit on May 21, 2014, and filed a motion for summary judgment on September 4, 2018. The Buehnes moved for summary judgment on January

3

31, 2019, focusing on the statute of limitations. In particular, the Buehnes claimed FSB exercised its option to accelerate the debt in 2006 and that the Note was "payable on demand" under K.S.A. 84-3-108(c).

After a hearing on the parties' summary judgment motions on March 5, 2019, the district court rejected the Buehnes' contention that the Note was payable on demand. The court also ruled that FSB never gave a "clear expression of their intent to accelerate and declare a default" until 2014, when FSB filed the underlying foreclosure action, thus the period of limitations began to run. On this basis, the court granted FSB's motion for summary judgment and denied that of the Buehnes. The court subsequently entered judgment in favor of FSB. The Buehnes then appealed.

On appeal, the Court of Appeals panel assumed, without deciding, that the statute of limitations began to run when FSB "declared the loan to be in default and demanded payment in full in 2006." *Buehne,* 2020 WL 5580498, at *4. Even if this were the case, the panel reasoned, the Buehnes waived their right to raise the statute of limitations by the terms of the Note itself. 2020 WL 5580498, at *4. The panel further concluded that this waiver was not void as against public policy. 2020 WL 5580498, at *5-7. Based on the waiver, the panel affirmed the district court's entry of summary judgment in FSB's favor. 2020 WL 5580498, at *8. The Buehnes then petitioned this court for review.

ANALYSIS

The Buehnes first challenge the panel's conclusion that the provision in the Note waiving the statute of limitations in advance was not void as against public policy.

*Standard of review*

The Buehnes' challenge implicates both the standard applicable to the review of a district court's entry of summary judgment and the standard applicable to the review of contracts. As the court recently observed:

"Our standard for reviewing an order granting summary judgment is de novo, and:

'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.'

"Our review over the interpretation and legal effect of written instruments is unlimited, and we are not bound by the lower courts' interpretations of those instruments. [Citations omitted.]" *Fairfax Portfolio LLC v. Carojoto LLC*, 312 Kan. 92, 94-95, 472 P.3d 53 (2020).

See, e.g., *Found. Prop. Invs., LLC v. CTP, LLC*, 286 Kan. 597, 600, 186 P.3d 766 (2008) ("[W]e must construe a promissory note. Accordingly, our review is de novo.").

5

*Discussion*

As mentioned above, the contract in this case states that the Buehnes "waive any applicable statute of limitations to the full extent permitted by law." The Buehnes claim that this provision violates public policy and may not be enforced. If we disagree and conclude that this provision does not violate public policy, FSB may proceed with its lawsuit. If we agree with the Buehnes that this provision violates public policy, further investigation is needed to ascertain whether we can find that the Bank's foreclosure action is untimely as a matter of law.

So what is "public policy" anyway? "Public policy consists of the 'principles and standards regarded by the legislature or by the courts as being of fundamental concern to the state and the whole of society.'" *Bolz v. State Farm Mut. Auto. Ins. Co.*, 274 Kan. 420, 424, 52 P.3d 898 (2002).

> "The public policy of a state is the law of that state as found in its constitution, its statutory enactments, and its judicial decisions. Contracts in contravention of public policy are void and unenforceable. However, it is the duty of the courts to sustain the legality of contracts in whole or in part when possible. Courts are not to hold a[n] entire contract void as contrary to statute unless the legislature so intended. When public policy touching on a particular subject has been declared by statute, courts may, under certain circumstances, void only those portions of an agreement which is in part a violation of the intent of the legislature and uphold the provisions in conformity with legislative intent. [Citations omitted.]" *Petty v. City of El Dorado*, 270 Kan. 847, 854, 19 P.3d 167 (2001).

The doctrine of public policy is limited by the caveat that "[t]oo frequently it is urged in desperation and at a time when all other helpers fail." *Wible v. Wible*, 153 Kan. 428, 433, 110 P.2d 761 (1941). The *Wible* court itself quoted a portion of what has been called "the most oft-quoted sentence on the doctrine of public policy to date":

6

"I, for one, protest, as my Lord has done, against arguing too strongly upon public policy;—*it is a very unruly horse, and when once you get astride it you never know where it will carry you. It may lead you from the sound law*. It is never argued at all but when other points fail." (Emphasis added.) *Richardson v. Mellish*, (1824) 130 Eng. Rep. 294, 303 (C.P.) (Burrough, J.).

See Ghodoosi, *The Concept of Public Policy in Law:  Revisiting the Role of the Public Policy Doctrine in the Enforcement of Private Legal Arrangements*, 94 Neb. L. Rev. 685, 693 (2016).

Contracts are presumed legal; the burden to prove otherwise—including a claim that a contract violates public policy—rests on the party challenging the contract. *Nat'l Bank of Andover v. Kansas Bankers Sur. Co.*, 290 Kan. 247, 257, 225 P.3d 707 (2010). A contract's "illegality must be made to appear from the facts and circumstances involved." *Stewart v. Fourth Nat'l Bank*, 141 Kan. 175, 181, 39 P.2d 918 (1935). Despite the general presumption of contracts' legality, "An agreement violates public policy if it is 'injurious to the interests of the public, contravenes some established interest of society, violates some public statute, or tends to interfere with the public welfare or safety.'" *In re Marriage of Traster*, 301 Kan. 88, 105, 339 P.3d 778 (2014) (quoting *Brenner v. Oppenheimer & Co.*, 273 Kan. 525, 548, 44 P.3d 364 [2002]). Still, Kansas courts have long recognized that, although freedom of contract "is limited by other public policy and legislation . . . 'the paramount public policy is that freedom to contract is not to be interfered with lightly.'" *Marshall v. Kansas Med. Mut. Ins. Co.*, 276 Kan. 97, 108, 73 P.3d 120 (2003) (quoting *Foltz v. Struxness*, 168 Kan. 714, 721-22, 215 P.2d 133 [1950]).

But to some degree, statutes of limitations also constitute expression of public policy on litigation rights, which "find their justification in necessity and convenience and serve the practical purpose of sparing courts from litigating stale claims and people from being put to the defense of claims after memories fade and witnesses disappear."

7

*Pfeifer v. Fed. Exp. Corp.*, 297 Kan. 547, 558, 304 P.3d 1226 (2013). Thus, competing policy considerations are at play when we assess a claim that a contractual provision violates some other policy. The question then becomes:  how do we balance these considerations?

The Restatement (Second) of Contracts notes that legislatures rarely explicitly proscribe the enforcement of a particular contract term on public policy grounds. Restatement (Second) of Contracts § 178, comment b (1981). Instead, a court usually finds a term unenforceable "on the basis of a public policy derived either from its own perception of the need to protect some aspect of the public welfare or from legislation that is relevant to that policy although it says nothing explicitly about unenforceability." Restatement (Second) of Contracts § 178, comment b. Moreover, "The strength of the public policy involved is a critical factor in the balancing process." Restatement (Second) of Contracts § 178, comment c.

Here, the panel found "no strongly held public policy interest to justify the invalidation of the waiver provision of the commercial promissory note." *Buehne*, 2020 WL 5580498, at *6. The panel distinguished one case upon which the Buehnes relied— *Hornick v. First Cath. Slovak Union of the United States of Am.*, 115 Kan. 597, 224 P. 486 (1924)—and embraced two other cases in which, it claimed, Kansas courts have sanctioned agreements to extend a statute of limitations:  *Younger v. Younger's Estate*, 198 Kan. 547, 426 P.2d 67 (1967), and *Barnes v. Gideon*, 224 Kan. 6, 578 P.2d 685 (1978). 2020 WL 5580498, at *5-7.

We find all three cases distinguishable. While *Hornick* generally supports the Buehnes' position, it was predicated upon a now-repealed statute—R.S. 60-306, *Seventh*—which explicitly provided that a contractual agreement to modify the statute of limitations was "'null and void as to such agreement.'" *Coates v. Metro. Life Ins. Co.*, 515 F. Supp. 647, 649 (D. Kan. 1981); see also *Pfeifer*, 297 Kan. at 552 (discussing the

8

lifetime of this statute, which eventually became G.S. 1949, 60-306, *Seventh*). And while both *Younger* and *Barnes* dealt with extensions of a statute of limitations, neither involved an indefinite waiver granted as part of the creation of the initial obligation. More importantly for our analysis, neither *Younger* nor *Barnes* involved commercial loans, such as the type at issue here.

Most courts that have considered indefinite, prospective waivers in perpetuity of a statute of limitations defense have rejected them on public policy grounds. See generally 4 Williston on Contracts § 8:44 (4th ed. 2021); 31 Williston on Contracts § 79:110 ("Although in certain states it has been held that a contract not to plead the statute of limitations whenever made may be binding indefinitely, the great and substantial majority of jurisdictions hold that such a promise is definitely in contravention of the public policy of the statute and will not, in consequence, be enforced."); 1 A.L.R. 2d 1445, § 2 (1948). See also *Umpqua Bank v. Gunzel*, 16 Wash. App. 2d 795, 799, 809, 483 P.3d 796 (2021) (surveying various decisions "wherein courts have refused to enforce statutes of limitations waivers"; ultimately concluding that a waiver of the statute of limitations made as part of a commercial guaranty was void as against public policy, even though the waiver purported to be "effective only to the extent permitted by law or public policy").

While we acknowledge these authorities, we do not construe the waiver here so broadly. In the Note, the Buehnes waived "any applicable statute of limitations *to the full extent permitted by law*." (Emphasis added.) The caveat was not mere surplusage: it would have permitted the Buehnes to raise any number of common-law-based challenges to FSB's attempts to enforce the Note, including, critically, that of laches or unconscionability.

The Buehnes' opportunity—but ultimate failure—to raise a common law defense, such as laches or unconscionability, to FSB's lawsuit is critical to our evaluation of the true extent to which the waiver constituted an insult to the public policy provisions

9

enshrined in the statute of limitations. As we noted in *Pfeifer*, the public policies behind statutes of limitations are concerned with "necessity and convenience" and such statutes "serve the practical purpose of sparing courts from litigating stale claims and people from being put to the defense of claims after memories fade and witnesses disappear." 297 Kan. at 558. None of those concerns are implicated here, however tempting it may be to consider them in the abstract. By the Buehnes' own admission, the record contains no evidence that they suffered prejudice from FSB's delay in enforcing its rights under the Note, and the matter was resolved on undisputed facts at summary judgment—which is among the most efficient and convenient dispute resolution mechanisms available under our system of justice. There are no facts to show (and no assertion) that memories have faded or disappeared. And while the Buehnes express concern that future contracts may arise under unfair circumstances, they do not claim they were unfairly treated.

Thus, without expressing an opinion as to whether the waiver in this contract would have been effective had the borrowers suffered prejudice, we find that the caveat "to the full extent permitted by law" constituted a sufficient safety valve to dispel any otherwise intolerable pressure exerted by such a waiver upon the public policy of this state. Moreover, the loan here was a commercial contract, thus removing from our consideration some of the equitable public policy concerns that a less presumptively equal bargaining scenario might raise. See, e.g., *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 873, 106 S. Ct. 2295, 90 L. Ed. 2d 865 (1986) (commercial situation generally does not involve large disparities in bargaining power, so court need not intrude into the parties' allocation of risk). Further, as the Buehnes raised no common law defense—and as the record is devoid of any showing of prejudice—we express no opinion on the effect or validity of another provision of the Note: "If the Lender delays enforcement or decides not to enforce any of the provisions of this Note . . . it will not lose its right to enforce the same provisions later nor any other provisions of this Note." The Buehnes' failure to raise a common law defense precludes our consideration of whether this provision purported to waive the right to assert one.

10

CONCLUSION

Because we conclude that the Buehnes' waiver was not void as against public policy, we affirm the judgment of the Court of Appeals and affirm the judgment of the district court as right for the wrong reasons.

Affirmed.

ROSEN, J., not participating.